## Cook's Committee v. Reaves, Sheriff.

(Decided Jan. 28, 1936.)

HARPER & GOAD for appellant.

W. D. GILLIAM for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

L. P. Cook, a resident of Allen county, died in 1917 intestate and left surviving a widow, Cora Cook, to whom he had been married about two months. His father, W. N. Cook, as appears in evidence, was his only heir at law. His widow, who has since married one Mr. Hood, qualified as his administratrix, and as such brought suit on some notes against Sam Cook, son of W. N. Cook, which the latter had signed as surety, and also on notes against a brother or brothers of Sam Cook upon which the father was bound as surety.

Action No. 376 was on a note for $272 in which Sam Cook was principal and W. N. Cook surety, and she recovered judgment for this sum with interest from May 9, 1912. Later she caused an execution to be issued on the judgment which the sheriff returned "no property found." On December 29, 1934, another execution was issued on this judgment amounting, with interest and costs, to $676.84, which was levied upon lands of W. N. Cook. In the meantime W. N. Cook had been adjudged incompetent to manage his estate and J. G. Law had been appointed committee for him.

Law, as committee, instituted this action against Denton Reaves, sheriff of Allen county, alleging that the judgment had been fully satisfied, and was null, void, and of no force or effect, and that the execution was likewise void and of no force or effect, and the sheriff had no right to sell the property upon which it had been levied. He asked that the execution be can-

celed, set aside, and held for nought, and that the judgment upon which same was based be adjudged satisfied, and that the sheriff be enjoined and restrained from advertising or selling the property levied on or any part thereof.

The defendant filed a special demurrer to the petition, and, without waiving same, filed a general demurrer, both of which were overruled. He then filed answer denying the material allegations of the petition. The court, after hearing oral evidence, dissolved the temporary restraining order issued by the clerk and dismissed the petition, and plaintiff is appealing.

To sustain his plea of settlement and satisfaction of the judgment, Mr. Law produced and filed in evidence a check of W. N. Cook dated June 14, 1920, for $100, payable to Cora Cook, administratrix. This check contains the following: "For full and final settlement with her as administratrix of the estate of L. P. Cook, deceased—also in full of all other matter between us personal or otherwise." He also produced in evidence a receipt signed by Cora Cook, administratrix, reading: "I, Cora Cook in my own right and as Admrx. of the estate of L. P. Cook, dec'd, hereby acknowledge receipt of one hundred dollars ($100.00) which is in full settlement of all claims I have against the said W. N. Cook either as Admr's or personally, and that is to show that the said W. N. Cook does not owe me anything and this $100 pays all claims I have against him. This June 14th, 1920." Appellant also introduced in evidence an agreed order entered in the circuit court of Allen county in four actions by the administratrix against Sam or H. H. Cook and W. N. Cook which had been consolidated and transferred to equity; one of the actions being No. 376. It was recited in the order that it appeared that W. N. Cook was the only one of the defendants who was solvent, and that plaintiff had in her hands as administratrix money which would be due W. N. Cook upon final settlement of the estate; that the administratrix should retain sufficient amount of the estate of L. P. Cook due W. N. Cook to satisfy the judgments and have credit therefor in the settlement of her accounts as administratrix.

The evidence shows that the proceeds derived from the sale of the personal property of L. P. Cook, over and above the widow's exemption, amounted to some-

thing over $3,400. In January, 1918, W. N. Cook paid the administratrix sums aggregating about $1,400 for corn which he bought from her. He later bought her dower interest in the farm, paying her $1,200 in cash therefor. It is claimed by appellants, and their evidence conduces to show, that on a number of occasions W. N. Cook and the administratrix met for the purpose of reaching a settlement, but that they were unable to reach a final agreement until June 14, 1920, when W. N. Cook and his sons, Sam and Harston, and the administratrix met, and with their attorneys present made a settlement evidenced by the check and receipts hereinbefore referred to. There is also evidence to show that, prior to and since the death of L. P. Cook, W. N. Cook owned considerable real and personal property, and was an active, alert business man up until about two or three years ago, when a committee was appointed for him.

While it is shown that the administratrix made a final settlement of her accounts, there is evidence indicating that the settlement and vouchers were lost, and we assume that it was never recorded, or at least the record was not introduced in evidence. The administratrix admitted the amounts that came into her hands from a sale of the personal property, but accounts for a large portion of it as being paid out for burial expenses, a monument, attorney's fees, costs, etc. While the evidence of Sam Cook, who was present at the time of the alleged settlement on June 14, 1920, is somewhat vague and indefinite as to what was included in the transaction, his evidence indicates that the amount due W. N. Cook from the estate was taken into account and the $100 for which the check was given represented the balance due the administratrix on the accounting. He also testified that the judgment in controversy was included in the accounting. H. H. (Harston) Cook testified that his father and the administratrix had had considerable trouble in attempting to reach a settlement, and that he would not settle until everything was "cleared off." On cross-examination he was asked whose debts his father paid in the settlement, and responded, "His and Sam's." The administratrix testified that W. N. Cook borrowed money from L. P. Cook for which he had executed his notes; that the settlement made on June 14, 1920, included only W. N. Cook's personal accounts and did not include the notes against

his sons which he had signed as surety; that the check for $100 represented the balance due from him personally to the estate. She testified that on the advice of her attorney she delayed collection of the judgments because W. N. Cook's property was considerably incumbered and it would be best to let the judgment run for awhile.

One of the actions, No. 372, referred to in the agreed order entered in the Allen circuit court, was against H. H. Cook on a note which W. N. Cook had signed as surety. On September 13, 1920, an execution issued in that action against H. H. Cook, which was replevied on December 30, 1920; H. H. Cook and W. N. Cook signing the replevin bond. It further appears in the evidence that none of the judgments referred to in the order made in the consolidated actions were released of record.

Counsel for appellant contend the evidence establishes that the judgment in the action in which the execution was issued had been paid, that judgments may be settled in the same way and manner as any other indebtedness, and that a receipt in full is a bar to any further claim that the one giving the receipt might have, unless same was procured by fraud or mistake. It is further contended by counsel that the presumption of payment is complete where a creditor waits for years and makes no attempt to collect the debt and the debtor is solvent. In support of these contentions, counsel cite and rely on the case of Breathitt County Board of Education v. Cockrell et al., 238 Ky. 694, 38 S. W. (2d) 660, and cite texts from R. C. L. The case cited quotes with approval from 21 R. C. L. 64, wherein it in part is said:

"The fact that a check or draft was received in absolute payment may be established by showing an express agreement to that effect, or by showing such circumstances as will satisfy the mind that such was the understanding of the parties at the time the check was taken."

The other texts cited from R. C. L. are to the effect that a voluntary acceptance of money or other method of payment in full settlement of a judgment usually has the effect of discharging the debt completely. Unquestionably the authorities cited are sound,

but the question which remains to be determined, and about which there is an irreconcilable conflict in evidence, is whether it was intended and there was an actual settlement of the judgment in controversy. That W. N. Cook's part of his son's estate was not sufficient to satisfy the judgments referred to in the order in the consolidated actions is clearly evidenced by the fact that he signed a replevin bond issued on one of the judgments after the order was entered and about six months after the alleged settlement in which the check or receipts in evidence passed. By the agreed order he was to satisfy all the judgments out of his part of the estate. The fact that he executed the replevin bond shows beyond doubt that a settlement of all matters was not included in the transaction of June 14, 1920. Not only so, but at the time the alleged settlement was made, attorneys for both parties were present and participated in the transaction. The fact that the judgments were not mentioned in either the check or receipts and that the administratrix was not required to make a release of the judgments on the margin of the record are significant facts, which, coupled with the evidence of the administratrix that the settlement only included personal debts and claims against W. N. Cook, strongly tend to support her contention. On the other hand, evidence for appellant is of a persuasive character. The confused and conflicting state of the evidence demonstrates the reason for, and wisdom of, the prevailing rule that where, on a consideration of the evidence as a whole, a mere doubt remains concerning the correctness of the chancellor's finding, it should not be disturbed by the appellate court. If the chancellor's opinion in this case is not sustained by a preponderating weight of evidence, to say the least, the evidence is about equiponderant, and certainly such as to leave the mind in doubt as to the truth and to warrant the application of the rule above referred to. This conclusion renders it unnecessary to consider and discuss some questions having apparent merit raised by counsel for appellee.

Judgment affirmed.